CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAY 30 2008
JOHN F. CORCORAN, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| GRACIE S. RICE,<br>    Plaintiff, | )<br>)<br>)   Civil Action No. 6:07cv016 |
| v. | )<br>) |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY<br>    Defendant. | )   By:  The Hon. Michael F. Urbanski<br>)          United States Magistrate Judge<br>) |

## MEMORANDUM OPINION

Plaintiff Gracie S. Rice ("Rice") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433("Act"). In this appeal, Rice claims that the Commissioner erred by finding that her mental retardation and back pain were not disabling. There are two major issues presented by this appeal. The first concerns the basis for the Administrative Law Judge's ("ALJ's") decision to disregard the medical opinion of one consulting psychologist, Dr. Barry Hensley, in favor of another, Dr. Wayne Sloop. The second concerns the ALJ's determination that Rice does not meet or medically equal the listing for mental retardation. Concerning the first issue, the ALJ assessed all of the evidence in the record concerning Rice's mental impairments. While Dr. Hensley's opinion conflicts with that of Dr. Sloop, the ALJ provided adequate reasons to accord greater weight to Dr. Sloop's opinion. As to the second issue, however, it does not appear that the ALJ appropriately addressed all of the evidence concerning the second prong of Listing 12.05(C). As a result, this case must be remanded for consideration of that issue.

# I.

Rice applied for benefits alleging disability as of April 24, 2003, due to back and shoulder conditions, among other complaints. (Administrative Record [hereinafter "R."] at 60-62, 103, 119) Rice's application was denied administratively, and she appealed the denial to an ALJ who held a hearing on December 14, 2005. On August 3, 2006, the ALJ issued a decision finding that Rice had a severe mental impairment because of her inability to read or write and her borderline intellectual functioning. (R. 24) Nevertheless, the ALJ determined that Rice could return to her past relevant work as a cleaner at Old Virginia Candle, as a cell phone inspector, as a cell phone assembler, and as a machine operator in shoe manufacturing, (R. 21), and denied her application for benefits. (R. 23) The Appeals Council denied Rice's request for review on May 10, 2007, rendering the decision final. (R. 5-7) The court now reviews the Commissioner's decision on cross motions for summary judgment.

When reviewing the decision of the Commissioner, the court may neither undertake a de novo review nor reweigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). The Commissioner determines whether the plaintiff satisfied the Act's entitlement conditions, and judicial review of disability cases is limited to determining whether that decision is supported by substantial evidence. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision

is not supported by substantial evidence, the case must be remanded or reversed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## II.

Rice attended school through the seventh grade, (R. 126), and is illiterate. (R. 293-94) Rice's mental functioning was first evaluated by Dr. E. Hugh Tenison on June 16, 2004. (R. 228-40) Dr. Tenison reviewed Rice's medical records for evaluation under Social Security Listings 12.04 and 12.06, which refer to Affective Disorders and Anxiety-Related Disorders respectively. (R. 228) Dr. Tenison opined that Rice suffered from depression and anxiety, but that neither were considered severe under the regulations. (R. 228, 230, 233) The ALJ adopted Dr. Tenison's opinion as to the severity of Rice's depression and anxiety disorder, noting that "there is no credible evidence that her mental function has deteriorated since [Dr. Tenison] completed" his review. (R. 17)

At the request of the ALJ, Dr. E. Wayne Sloop, a clinical psychologist, examined Rice on July 28, 2005, for a consultative psychological evaluation. (R. 18, 267-76) During the visit, Dr. Sloop administered the Minnesota Multiphasic Personality Inventory-2 ("MMPI-2"), which took several hours.[1] (R. 267-276) Dr. Sloop noted that Rice was "certainly persistent in completing it as she labors for more than 2 hours before finally finishing." (R. 271) The results of the MMPI-2, however, were "invalid and uninterpretable." (R. 271) The results were invalid because all ten of the clinical scales were elevated, a finding that is impossible, according to Dr. Sloop, because of the way the test is constructed. (R. 271) Rather than rely on Dr. Sloop's opinion as written, the ALJ interpreted his report as follows: "I take this to indicate that the claimant

---

[1] The MMPI-2 is a test of adult psychopathology "[u]sed by clinicians to assist with the diagnosis of mental disorders and the selection of appropriate treatment methods." Minnesota Multiphasic Personality Inventory®-2, http://www.pearsonassessments.com/tests/mmpi_2.htm#quickfacts/.

3

intentionally sought to portray herself as psychologically impaired and that her over-endorsement of psychopathology was so great that intentional over endorsement was the logical conclusion." (R. 18) Nonetheless, the ALJ noted that even if his interpretation of the results is incorrect, "Dr. Sloop's statements regarding the claimant's mental residual functional capacity are clear and unambiguous." (R. 18)

Dr. Sloop rendered a diagnosis of Borderline Intellectual Functioning, based on his observations that Rice seemed "intellectually slow" at her examination. (R. 270) Rice had a GAF score of 45-50.[2] (R. 271) Further, Dr. Sloop opined that Rice "seems to meet the criteria for an appropriate diagnosis of Dysthymic Disorder and Generalized Anxiety Disorder."[3] Functionally, Dr. Sloop noted that Rice appeared "capable of performing simple and repetitive tasks. Her ability to perform detailed and complex tasks is negatively impacted by her lower intelligence and mood disorder." (R. 272) Dr. Sloop noted that Rice's psychological and emotional complaints would not preclude her from minimal functioning in a work environment or from completing a normal work day or work week without interruption. (R. 272) Dr. Sloop opined that Rice's prognosis was poor and that she would be incapable of handling her own funds. In the conclusion of his report, Dr. Sloop writes: "[h]er current ability to deal with the usual stresses in competitive work is not precluded but is limited because of low motivation, mood disorder, and borderline intellectual functioning." (R. 272)

At the request of Rice's disability counsel, Rice was seen by Dr. Barry Hensley, a licensed school psychologist who is the Director of Educational Services Institute. (R. 284-89)

---

[2] A GAF of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

[3] Dysthymic disorder is a depressive mood disorder. Dorland's Illustrated Medical Dictionary 579 (30th ed. 2003).

4

Dr. Hensley saw Rice on November 28, 2005 for a vocational, intellectual and academic evaluation. Dr. Hensley administered the Wechsler Adult Intelligence Scale - Third Edition ("WAIS-III") to Rice and she earned a verbal scaled IQ score of 67, a performance scaled score of 72 and a full scaled score of 66, which falls in the mildly mentally retarded classification. (R. 286) Dr. Hensley attributed Rice's cognitive weakness to educational deprivation, an inability to focus and concentrate, depression, and anxiety. (R. 286-87) Dr. Hensley stated that Rice's "native intellectual functioning may fall more within the borderline range but currently she is functioning well within the mildly mentally retarded range." (R. 288) Based on his observations and examination, Dr. Hensley opined that Rice was vocationally disabled as of April, 2003 due to a combination of chronic pain, diminished cognitive capacity, chronic depression and anxiety. (R. 288)

### III.

In terms of her exertional capabilities, the record reflects that Rice had a work related fall on March 20, 2001. (R. 19) Rice was off work for a period of time and received workers' compensation benefits. Rice was working part time as a machine operator when she was laid off during a downsizing in April, 2003. (R. 295-96) From 2002 to 2005, Rice was seen by Dr. Robert Sydnor, an orthopedic surgeon, and Dr. Murray Joiner, a physiatrist, for back and shoulder pain. Dr. Sydnor saw Rice on February 14, 2002 and March 25, 2003. (R. 137-40) Dr. Sydnor did not believe that he could be of assistance to Rice because she did "not have a surgically approachable lesion on very numerous and exhaustive tests ordered from this office." (R. 140) Concerning work, Dr. Sydnor's note stated "[a]t this point I think she can do her job, which is light in nature, and I do not believe that an eight hour day for five days a week would be excessive." (R. 140)

Rice was treated by Dr. Murray Joiner over several years for her chronic joint pain. Dr. Joiner treated Rice with a number of injections, medications and a course of physical therapy. During a visit on June 21, 2002, Rice informed Dr. Joiner that she had returned to working eight hour days, but that she has difficulty "standing on cement, repetitive bending, and lifting." (R. 185) Dr. Joiner informed Rice that he would defer to Dr. Sydnor's opinion as to her ability to work, as Dr. Sydnor had a longer treating relationship with Rice. (R. 185) On July 5, 2002, Dr. Joiner updated Rice's work restrictions and opined that she would need to alternate between sitting and standing as needed, she should avoid repetitive bending, she could lift thirty pounds occasionally and ten to fifteen pounds regularly, and she could work eight hour days. (R. 210) Rice was continued on these restrictions following a visit with Dr. Joiner on August 16, 2002. (R. 180-81)

To assist Dr. Joiner in determining appropriate workplace restrictions, a functional capacity evaluation was done on October 8, 2002 and a work site evaluation was done on October 15, 2002. (R. 177) The functional capacity evaluation supported Rice's ability to perform "light to light/medium work with occasional lifting 13 pounds, frequent lifting 9 pounds, constant lifting 4 pounds, standing frequently, walking occasionally, bending occasionally, reaching frequently, climbing infrequently, squatting occasionally, kneeling infrequently, crawling occasionally, and twisting frequently." (R. 177) The work site evaluation revealed that Rice's job required her to "lift 2 pounds, reportedly has to lift up to 6 jars every 30-50 seconds, requiring simple grasping, occasional slight bending at the waist, constant reaching." (R. 177) At an examination with Dr. Joiner on October 18, 2002, Rice told Dr. Joiner that she is able to perform the duties outlined in the above description, but requires an addition fifteen minute break in the afternoon. Dr. Joiner released Rice to perform her job with an additional

6

fifteen minute break at 2:30 p.m. each day. (R. 176) Dr. Joiner continued to see Rice periodically over the next few years without making any changes in her work status or restrictions.

## IV.

The court finds that the ALJ evaluated all of the relevant medical evidence and explained the weight given to such evidence. An ALJ is required to analyze every medical opinion received and determine the weight to give to such an opinion in making a disability determination. 20 C.F.R. § 404.1527 (d). The ALJ is to consider a number of factors when determining the weight to give to a physician's opinion which include whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. See Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). The ALJ must provide his reasons for giving a physician's opinion certain weight or explain why she discounted a physician's opinion. Mastro, 270 F.3d at 178; 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

Rice argues that the ALJ improperly dismissed Dr. Hensley's opinion, apparently considering him a vocational expert, (R. 19), rather than an acceptable medical source.[4] The ALJ's decision noted that "Dr. Sloop is the only acceptable medical source, who is also a mental health specialist and has examined the claimant." (R. 19) Rice is correct to point out that as a

---

[4] Perhaps the ALJ's reference to Dr. Hensley as a vocational expert stems from information found in the footer of the letterhead for Dr. Hensley's firm which is ostensibly descriptive of the services he provides: "Educational Services Institute, lists the following: Disability Determination Services • Psycho-Educational Assessments • Individual Counseling • I.E.P. Development • FAP Services • Educational and Vocational Rehabilitation Services • Vocational Expert Services." (R. 284)

7

licensed school psychologist, Dr. Hensley is an appropriate medical source. See 20 C.F.R. § 404.1513(1). Regardless of how Dr. Hensley's expertise was characterized by the ALJ, it is clear that the ALJ carefully evaluated Dr. Hensley's assessment of Rice.

The ALJ's opinion fully considered Dr. Hensley's report and accorded it little weight. (R. 22-23) The ALJ's opinion described the testing performed by Dr. Hensley and the IQ scores obtained. (R. 19) At some length, the ALJ also considered Dr. Hensley's opinion that Rice is "vocationally disabled," (R. 288), and dismissed it as "an advocacy report that was designed and calculated to support the claimant's disability application." (R. 22-23) The ALJ wrote:

> To support the claimant's application Dr. Hensley accepted and credited all of the claimant's statements; he resolved all questions in the claimant's favor; he ignored, or at least did not address, facts and factors that indicated the claimant was not disabled; and he provided a bald statement that he considered the claimant to be disabled without providing a basis or explanation.
>
> Dr. Hensley ignored the DDS residual functional capacity assessments, the fact that two treating physician released the claimant to return to her past work, and the fact that Dr. Sloop said that psychologically the claimant could perform sustained, full time work.
>
> Dr. Hensley's conclusion that the claimant is disabled has no basis or is based on false assumptions; therefore, the conclusion is not supported and is rejected. It is also the ultimate issue in the case and is reserved to the Commissioner. I have considered Dr. Hensley's opinion that the claimant is disabled and I have accorded it little weight.

(R. 23)

The ALJ also considered in great detail the assessment of Rice's mental status performed by Dr. Sloop and adopted that assessment. The ALJ noted that Dr. Sloop's assessment was slightly more restrictive than that performed by the state agency physician. The ALJ also noted that Rice had no counseling or inpatient mental health treatment and no treating source

8

recommended any treatment with a mental health specialist. The ALJ concluded that "Dr. Sloop interviewed the claimant and administered the MMPI-2 and he concluded that the claimant's mental impairments would not prevent her from consistently performing full time work that did not involve complex or detailed tasks." (R. 19) The record makes it clear that the ALJ considered all of the opinions in the record and properly provided reasons for according Dr. Hensley's opinion little weight.

V.

Paragraph C of Listing 12.05 concerning mental retardation requires a valid verbal, performance or full scale IQ between 60 and 70 and a physical or other mental limitation imposing an additional and significant work-related limitation of function. Rice clearly meets the first requirement of this listing as her verbal scaled score is 67 and her full scaled score is 66 on the only valid IQ test in the record. As such, Rice would meet the listing if she suffers from an additional and significant work-related limitation of function.

As the Fourth Circuit has noted, the social security "regulations do not define a significant limitation, but an impairment does not have to be disabling in itself." Branham, 775 F.2d at 1273. An illness or injury imposes a significant limitation when its effect on the claimant's ability to work is more than slight or minimal. Pullen v. Bowen, 820 F.2d 105, 109 (4th Cir. 1987); Cook v. Bowen, 797 F.2d 687, 690 (8th Cir. 1986); Nieves v. Sec'y of HHS, 775 F.2d 12, 14 (1st Cir. 1985).

The second element of Listing 12.05(C) closely parallels a finding of a severe impairment under 20 C.F.R. § 404.1520(c). The second prong of Listing 12.05(C) requires "a physical or other mental impairment imposing an additional and significant work-related limitation of function," and a severe impairment is defined in § 404.1520(c) as "any impairment

9

or combination of impairments which significantly limits your physical or mental ability to do basic work activities." See Nieves, 775 F.2d at 14.

Here, the ALJ only considered Rice's borderline intellectual functioning as a severe impairment. (R. 17) The ALJ did not, however, address whether Rice's physical limitations would constitute a significant work-related limitation of function as required under Listing 12.05(C). While it is true that Drs. Sydnor and Joiner released Rice to perform her previous work at Old Virginia Candle, it must be noted that the functional capacity evaluation relied upon by Dr. Joiner did note limitations on her ability to perform certain tasks. (R. 177) While this may or may not be sufficient to meet Paragraph C of Listing 12.05, there is no question that this issue must, at the very least, be addressed by the Commissioner. As the Fourth Circuit noted in Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439 (4th Cir. 1997), "[b]efore we can determine whether substantial evidence supports an administrative determination, we must first ascertain whether [the agency] has discharged [its] duty to consider all relevant evidence," quoting Jordan v. Califano, 582 F.2d 1333, 1335 (4th Cir. 1978). Here, while the ALJ included that Rice had no physical impairment precluding her from returning to her past relevant work, he did not consider Rice's physical impairments and critically the information on the October 8, 2002 functional capacity evaluation, (R. 174), under the standard set forth in the second prong of Listing 12.05(C). This case must be remanded for an administrative decision on this issue.

Again, it is not the province of the court to make disability determinations or to re-weigh the evidence in this case; rather, the court's role is to determine whether the Commissioner's decision is supported by substantial evidence. It is clear from review of the record in this case that the ALJ did not consider the evidence of Rice's physical impairments under the standard set forth in the second prong of Listing 12.05(C). By separate order, this case will be reversed and

10

remanded for an administrative determination of that issue under sentence four of 42 U.S.C. § 405(g).

    The Clerk of Court hereby is directed to send a copy of the Memorandum Opinion and accompanying Order to all counsel of record.

Enter this 30th day of May, 2008.

/s/ Michael F. Urbanski
Michael F. Urbanski
United States Magistrate Judge